# FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Peter R. Moyers
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Kelly A. Welsh

517 East Wisconsin
Suite 182
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

February 15, 2019

Honorable Lynn Adelman
U.S. District Court
517 E. Wisconsin Avenue
Milwaukee, WI 53202

Re:  *United States v. Christopher W. Eklund*
     Case No. 16-CR-176

Dear Judge Adelman:

This Court will sentence Christopher Eklund next week on a charge of Distribution of Child Pornography. The conduct behind Eklund's conviction occurred while he was living and working in China, and he was prosecuted there for that same conduct. *See* PSR, ¶ 49. He was arrested on October 12, 2016, and he has been in custody ever since. His federal custody began on May 10, 2018.

Eklund has no prior criminal history. He has no history of any "contact" child sexual offenses. That's important because statistics show that he's a lower risk to re-offend, and tools available on federal supervision after his release will reduce that risk further. Eklund entered into a plea agreement that eliminated the harsh mandatory minimum sentence that count two would have called for (15 years). But it constrains him to argue for a sentence of not less than 96 months in prison beyond the time he already spent in China. Eklund asks this Court to impose that sentence as any additional confinement would be greater than necessary to comply with the purposes of sentencing.

The illegal conduct here, peer-to-peer file sharing of child pornography within a password-protected private network, is a very serious offense. It is difficult to overstate the awfulness of the material, to say nothing of its creation. Certainly in the government's view, Eklund's many "chats" exacerbated the seriousness of his conduct by "advertising" it to those in his network. The PSR documents some of these appalling comments, and for most anyone they evoke a visceral disgust. Yet these screen captures also appear to corroborate that Eklund never acted to engage in "contact" sexual offenses with children despite the precarious position he put himself in: as a teacher surrounded by children. His display of pornography to some of them was also an aggravating factor. Obviously conditions of supervision can prohibit that type of contact with children, and Eklund welcomes that approach. Finally, after 19 months in a Chinese prison, Eklund was turned over to FBI agents and flown back to the United States. Eklund cooperated with the agents, acknowledged his crimes, and made a complete confession.

Even though Chris Eklund has never been convicted of a crime, he faces an advisory guideline range of 151-188. This is so in part because many of the enhancements in USSG § 2G2.2 "now apply to most offenders."[1] This guideline even adds two levels for distribution under § 2G2.2(b)(3)(F) even though he specifically pleaded guilty under § 2252A(a)(2) to having "knowingly distributed a visual depiction."[2] So Eklund's offense

---

[1] *See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012)*, p. iii ("four of the of six sentencing enhancements in §2G2.2 — those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels — now apply to most offenders").

[2] *See United States v. Cubero*, 754 F.3d 888, 894 (11th Cir. 2014) (§ 2G2.2(a)(2) covers multiple possible violations of 18 U.S.C. § 2252(a)(2) including knowing distribution, and the Sentencing Commission found it appropriate to add two offense levels to the base offense level for all of them); *United States v. Reingold*, 731 F.3d 204 (2d Cir. 2013) (application of the sentencing guidelines' child pornography offense level enhancement for distribution did not constitute impermissible double counting, since the guidelines base offense level applicable to defendant's offense was not restricted to crimes involving distribution). The Seventh Circuit's approach is less clear. In *United State v. Tenuto*, 593 F.3d 695, 697 (7th Cir. 2010), the court held that if the conduct that satisfied an element of the underlying offense is already part of the base offense level, double counting occurs if that same conduct also enhances the sentence; "the defendant is being punished twice for the same act." However, two years later, the court changed course: "We hold that double counting is generally permissible unless the text of the guidelines expressly prohibits it." *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012). Then, to further muddy the waters, just two years later in a case where the government, citing *Tenuto*, asserted that impermissible "double counting" would result from giving this increase in a prosecution for distribution, the court noted in a footnote that it would take no position concerning the government's reading of *Tenuto*. *United States v. McGill*, 754 F.3d 452, 456, n. 1 (7th Cir. 2014).

level ballooned by 15 levels from the already elevated base offense of 22. Eklund agreed to these enhancements and makes no objection to the PSR's guideline findings. Of course, that does not mean he agrees to the sentence the guideline recommends: he does not, especially when he has not been a contact offender and because recent social science research has shed light on the efficacy of psycho-sexual treatment of offenders' clinical sexual disorders. *See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses* (2012), pp. 277-287. This Court can craft reasonable conditions of release that will support effective, post-release supervision.

There is good reason to believe that federal supervision of Eklund will be effective at reducing the already low risk of reoffending he poses. First, regarding this risk:

> [A]ssumptions - widely shared and often cited by courts – [are] that sex offenders re-offend at rates that are "frightening and high." Studies show that these assumptions are wrong. Those required to register as sex offenders vary in their traits, life experiences, character, and re-offense risk. The vast majority do not re-offend. Moreover, a newly released offender's re-offense risk can be measured with simple actuarial scales, and that risk drops significantly for each year he spends in the community offense-free.[3]

For Eklund, he'll be 50 in a little over two years. Studies show that sexual criminal behavior declines with age.[4] Further, statistics compiled by the United States Probation Office demonstrate that he likely poses a low to very low risk of reoffending.[5] Probation supervision can use widely available and inexpensive actuarial testing, like the Static-99R to sort offenders under supervision by risk level. And studies show that non-offending

---

[3] Amici Curiae Brief of Scholars Whose Work includes Sex Offense Studies in Support of Petitioner, *Gundy v. United States*, United States Supreme Court no. 17-6086, 2018 WL 2716794, pp. 3-4, available at: https://www.supremecourt.gov/DocketPDF/17/17-6086/48963/20180601161907751_17-6086%20tsac%20Scholars%20Whose%20Work%20Includes%20Sex%20Offense%20Studies_A-2b.pdf

[4] Michael Lasher & Robert McGrath, *Desistance from Sexual and Other Violent Offending Among Child Sexual Abusers*, 20 Crim. Justice & Behav. 1 (2016). As bases for this decline, the author reduced sexual drive related to age-related disease and decreases in testosterone as well, low self-control and impulsivity are related to risk of sexual and other types of criminal recidivism, and as individuals age, self-control increases and impulsivity decreases.

[5] News & Views, Vol. XLII, No. 12, June 5, 2017. This article provided a synopsis of key findings from an earlier study in the September 2016 issue of Federal Probation; see Cohen, T. H.., & Spidell, M. C. (2016). "How Dangerous Are They? An Analysis of Sex Offenders Under Federal Post-Conviction Supervision," Federal Probation. 80(2), 21-32

SORNA registrants at all levels of risk decline in risk over time.[6] This chart from a United States Probation Office publication demonstrates the historically low recidivism rates for a child pornography offender, like Eklund, with no record of contact behavior.[7]

**Table 2. Three year recidivism rates for federal sex offenders while under supervision, by instant conviction offense**

| Instant offense at conviction | Any arrest | Recidivism outcomes | | |
|---|---|---|---|---|
| | | Non-sexual violent arrest | Any sex arrest | Probation revocation |
| **All offenders** | | | | |
| Non-sex offender | 31.4% | 7.9% | 0.5% | 22.6% |
| Sex offender | 17.5% | 1.8% | 2.8% | 19.2% |
| **Conviction sex offense** | | | | |
| All child pornography | 13.0% | 0.5% | 2.6% | 11.6% |
| No record of contact behavior | 12.5% | 0.4% | 2.2% | 9.5% |
| Official record of contact behavior | 14.7% | 0.7% | 4.1% | 18.2% |
| Sexual assault | 23.1% | 3.6% | 2.2% | 38.5% |
| SORNA | 41.8% | 8.0% | 7.7% | 47.2% |
| Transportation for illegal sexual activity | 17.3% | 1.6% | 2.4% | 14.4% |

Note: Sub-sample used for 3 year arrest rates is restricted to actively supervised TSR cases for which the offender was sentenced to at least 3 years of supervision.

Christopher Eklund is an intelligent, creative person who still has time to carve out a meaningful life after prison. His crime and § 3553(a)'s objectives—for a sentence that reflects its seriousness and for just punishment—require a significant term of imprisonment. This 96-month sentence, on top of the time he already spent in China,

---

[6] Brief of Social Science and Law Scholars as Amici Curiae in Support of Respondent, *United States of America v. Haymond*, United States Supreme Court no. 17-1672, 2019 WL 410760 (2019), pp. 21-22. available at: https://www.supremecourt.gov/DocketPDF/17/17-1672/81684/20190125114022994_17-1672%20bsac%20Social%20Science%20and%20Law%20Scholars.pdf.
*See also, "Strategies for Advancing Sex Offender Management,"* News & Views June 19, 2017 Vol. XLII, No. 13, p. 1 (Instruments such as the STATIC-99/R, RRASOR, VASOR, and STABLE- and ACUTE-2007 provide estimates of recidivism and/or help identify specific risk factors that are linked to recidivism. They are useful for informing the intensity of interventions, such as more intensive supervision, monitoring, and treatment for higher risk offenders).
[7] News & Views, Vol. XLII, No. 12, June 5, 2017

satisfies those sentencing purposes. The sentence should also reflect the absence of any criminal record and of his employment history (albeit, teaching children is *not* in his future), and service to his country while in the Army and then the Army National Guard from 1990 to 1998. Eklund joined the Army after just graduating from high school. He made that choice because while college certainly interested him he could not afford it. But that has not dampened his pursuit of life-long interests in mathematics, digital data compression, philosophy, and religion. He intends to continue pursuing those interests going forward, whether in prison or after.

For all of these reasons, Christopher Eklund asks this Court to impose a 96-month sentence followed by five years of supervised release.

Thank you.

Sincerely,

s/John W. Campion
John W. Campion

JWC/jmb